**Kenneth C. VANTINE and Rebecca Vantine, Plaintiffs-Appellants,**

v.

**ELKHART BRASS MANUFACTURING COMPANY, INC. and Wausau Insurance Company, Defendants-Appellees.**

Nos. 83–2918, 84–1468.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 14, 1984.

Decided May 7, 1985.

Douglas A. Mulvaney, Stutsman & Stevens, Elkhart, Ind., for plaintiffs-appellants.

Timothy J. Walsh, Edward N. Kalamaros & Assoc., South Bend, Ind., Susan B. Tabler, Ice, Miller, Donadio & Ryan, Indianapolis, Ind., for defendants-appellees.

Before BAUER and COFFEY, Circuit Judges, and DOYLE, Senior District Judge.*

COFFEY, Circuit Judge.

The plaintiffs, Kenneth and Rebecca Vantine, filed suit in the Elkhart Indiana Superior Court alleging that the actions of the defendant, Elkhart Brass Manufacturing Company, Inc. in terminating the employment of Kenneth Vantine constituted a retaliatory discharge for his filing a workmen's compensation claim. The plaintiffs further alleged that the defendant, Wausau Insurance Company, fraudulently and wrongfully retaliated against Kenneth Vantine to deprive him of the benefits he was entitled to receive under the Indiana workmen's compensation laws. Following removal of the suit to the Federal district court, summary judgment was granted to each of the defendants. 572 F.Supp. 636. We affirm.

### I.

The following facts relevant to the Vantines' claim against the defendant, Wausau Insurance Company ("Wausau") are not in dispute and were cited by the plaintiffs in their complaint against Wausau. On January 25, 1980, Kenneth Vantine sustained a severe and permanent injury to his back while performing his duties as an employee of the Elkhart Brass Manufacturing Company, Inc. ("Elkhart Brass") located in Elkhart, Indiana. Vantine was referred by his employer to the company's physician, a Dr. Hastings, who referred him to Dr. Echeverria, an orthopaedic surgeon, for evaluation. Dr. Echeverria found that Vantine had suffered a severe sprain of the lumbo-sacral spine. On May 14, 1980, Wausau requested that Vantine be examined by a Dr. Earl Heller, a South Bend, Indiana orthopedist.[1] Dr. Heller examined Vantine on May 29th and reported to Wausau that Vantine:

> "most likely sustained a lower back strain as a result of the injury.... However, I was unable to substantiate his continued complaints with any objective physical findings in the office. This patient should be encouraged to increase his activities and I do not find any objective findings that would prevent him from working at this time."

---

* The Honorable James E. Doyle, Senior District Judge for the Western District of Wisconsin, is sitting by designation.

1. Vantine partially bases his complaint on scheduling errors made by Wausau for his appointments with Drs. Heller and Friedman. However, the scheduling errors did not prevent Vantine from being examined by the orthopedists.

After learning of Dr. Heller's evaluation of Vantine's condition, Wausau terminated Vantine's weekly temporary total disability benefits. On August 29, 1980, Wausau requested that Vantine be examined by a Dr. Morris Friedman, another South Bend, orthopedic surgeon. Vantine, who once again had to correct a scheduling error made by Wausau, was examined by Dr. Friedman on September 19, 1980 and was advised that he should avoid surgery because, in Dr. Friedman's opinion "patients with his clinical picture," i.e., "the absence of true, hard clinical findings for a herniated disc, ... the absence of a strongly positive myelogram, and especially ... patients who report work related injuries," often did not benefit from surgery. Dr. Friedman informed Vantine that if he followed a recommended exercise program, he could return to work in approximately four to six weeks. Wausau restored Vantine's temporary disability benefits based upon Dr. Friedman's recommendation. Vantine, who had continued to be treated by Dr. Echeverria since his initial consultation with him, elected to have the lumbar fusion surgery recommended by Dr. Echeverria on October 2, 1980. On October 14, 1980, Wausau sent a letter to Vantine denying any responsibility for the expense of the surgery and further informing Vantine that it would cease to pay temporary total disability benefits after October 30, 1980—the date Vantine could have returned to work according to Dr. Friedman.

On November 26, 1980, Vantine filed a claim for workmen's compensation benefits with the State of Indiana and a hearing was held on June 15, 1982, before a Single Hearing Member of the Indiana Industrial Board. The Single Hearing Member was asked to determine whether Vantine should be paid temporary total disability benefits beyond October 30, 1980; whether the additional medical expenses of Dr. Echeverria were justified; whether Vantine suffered a permanent partial impairment; and whether Vantine should be awarded attorneys'

fees because either Elkhart Brass or Wausau acted in bad faith in handling his claim. Based upon the evidence presented, the Single Hearing Member awarded additional temporary total disability benefits from October 30, 1980 to January 13, 1981 and required Wausau to reimburse Vantine for all medical expenses stemming from the accident, including Dr. Echeverria's surgery. The Single Hearing Member also found that there was no evidence to substantiate a claim that either Elkhart Brass or Wausau had acted in bad faith.

The following facts relevant to the plaintiffs' claim against Elkhart Brass are not in dispute. Kenneth Vantine's employment relationship with Elkhart Brass was governed by a collective bargaining agreement between the company and the International Association of Machinists and Aerospace Workers, Local No. 118, District No. 103 ("Union").[2] The collective bargaining agreement provided that all dismissals of employees must be for just and proper cause and defined a grievance as "any dispute between the Company and any employee in the Bargaining Unit, regarding the interpretation, application, claim of breach or violations of this Agreement." The collective bargaining agreement also provided that any employee having a grievance with Elkhart Brass must attempt to settle that matter in the manner provided in the grievance procedure of the agreement. The grievance procedure, which was the sole method for settling disputes, contained a four-step method of dispute resolution, the final step being arbitration. According to the terms of the collective bargaining agreement, the decision of the arbitrator was final and binding on the Union, its members, the employee or employees involved, and Elkhart Brass. The collective bargaining agreement also established the procedure to be followed when an employee was unable to work because of an extended illness or injury. Article III, Section 4(c) provided:

---

**2.** All references are to the collective bargaining agreement in effect between Elkhart Brass and the Union from 1978 through 1981.

"Sick leave will be granted for a period of one (1) year, or a period of time equal to the employee's seniority, whichever is the shorter. After such a period of time, the employee will revert to a lay-off status and his job will be filled on a permanent basis."

The Collective Bargaining Agreement provided further that, "[a]n employee shall cease to have seniority if: ... he is laid off for a period equal to his length of seniority, at time of lay-off, without being recalled."

Elkhart Brass placed Vantine on sick leave January 28, 1980, and he remained on sick leave for one year. On January 28, 1981, at the expiration of the sick leave period, Elkhart Brass placed Vantine on layoff status. When the Union learned that Vantine was placed on layoff status, it filed a grievance claiming that "employees off work because of an injury covered by workmen's compensation should not be treated the same as those on sick leave but should retain seniority rights indefinitely." On April 22, 1981, the Union filed a grievance on behalf of Vantine, alleging that Elkhart Brass violated the collective bargaining agreement when it placed Vantine on sick leave and layoff status pursuant to Article III, Section 4(c). This grievance was processed through the first three steps of the grievance procedure, and because the matter was not resolved, it was submitted to an arbitrator for a final and binding resolution. Elkhart Brass and the Union, acting in its capacity as collective bargaining representative but without Kenneth Vantine's knowledge much less consent, entered into a written agreement on January 4, 1982 in which they agreed that, if the arbitration were resolved in favor of Elkhart Brass, the Union would agree not to file a grievance protesting Vantine's termination. On August 16, 1982, the arbitrator issued an award concluding that Elkhart Brass properly interpreted the collective bargaining agreement when it placed Vantine on sick leave and lay-off status pursuant to Article III, Section 4(c). During the pendency of the arbitration, Elkhart Brass terminated Vantine because he had been on lay-off status for a period of time equal to his length of seniority, and neither the Union nor Vantine filed a grievance concerning this termination.

On October 7, 1982, the plaintiffs filed a complaint in Elkhart Indiana Superior Court alleging that Wausau acted in bad faith because: (1) it would not recognize that Dr. Echeverria was an "authorized physician" within the meaning of the Indiana Workmen's Compensation Act; [3] (2) it sought out the services of Drs. Heller and Friedman instead of relying entirely upon the opinion of Dr. Echeverria; (3) it informed Vantine of incorrect appointment dates with Drs. Heller and Friedman; (4) it failed to obtain a permanent partial impairment evaluation from Drs. Heller and Friedman; (5) it failed to advise Vantine that it would not pay for the surgery performed by Dr. Echeverria; and (6) it improperly terminated Vantine's temporary total disability benefits on October 30, 1980. The complaint further alleged that the actions by Wausau and Elkhart Brass were "willful, wanton, reckless, ... fraudulent, ... grossly negligent and oppressive and intended to deprive Kenneth Vantine of his employment and workmen's compensation benefits." Moreover, the complaint alleged that:

"each of these actions constituted retaliatory acts against Kenneth Vantine due to his exercise of his rights under the workmen's compensation laws of Indiana; and, that these actions constitute a tortious interference with Kenneth Vantine's employment contract rights and

---

**3.** Ind.Code § 22–3–3–4 "requires that after an injury and prior to an adjudication of permanent impairment, an employer shall furnish, or cause to be furnished, an attending physician and such other medical services as the physician or the Industrial Board may deem necessary.... [I]n the absence of an emergency or other good reason, an employee is not free to simply elect, at the employer's expense, additional treatment or other physicians than those tendered by his employer." *Perez v. United States Steel Corp.,* 172 Ind.App. 205, 359 N.E.2d 924, 926 (1977).

further constitute a breach of this employment contract."

On November 12, 1982, Elkhart Brass filed a petition, pursuant to 28 U.S.C. §§ 1441 and 1446, to remove this case to Federal court on the basis that the plaintiff's complaint was grounded on a theory of liability under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Wausau failed either to object to the removal petition or to join its co-defendant, Elkhart Brass, in the removal petition. The case was removed to the United States District Court for the Northern District of Indiana, where Wausau and Elkhart Brass each filed motions for summary judgment. The district court granted summary judgment to Elkhart Brass ruling that the plaintiffs' complaint failed to state a breach of the collective bargaining agreement under section 301. The district court also granted summary judgment to Wausau holding that the complaint failed to state a claim for fraud and further that all of the plaintiffs' claims were contrary to the exclusive remedy provisions of the Indiana Workmen's Compensation Act. The district court additionally ruled that the plaintiffs' complaint failed to advance any allegations to suggest that Rebecca Vantine was harmed or damaged in any special way, and thus it failed to state a claim upon which relief could be granted as to Rebecca Vantine.

## II.

### A. Jurisdiction Over the Claim Against Elkhart Brass.

The plaintiffs initially argue that their complaint alleges a cause of action against Elkhart Brass under state tort law and thus that the Federal courts have no jurisdiction of this matter. Elkhart Brass counters that the collective bargaining agreement at issue in this case is an employment contract as defined in section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and that the plaintiffs' complaint clearly refers to this employment contract as the basis of the lawsuit. Indeed, the complaint alleges that, "the ac-

tions of Defendant Elkhart Brass and Wausau were grossly negligent and constitute tortious interference with Plaintiff Kenneth Vantine's employment contract rights and further constitute breach of his employment contract." The plaintiffs respond that the complaint's reference to "plaintiff Kenneth Vantine's employment contract rights and ... breach of his employment contract," was inserted "solely to protect and preserve" Vantine's rights pending a possible appeal of the arbitrator's decision. Moreover, alleging that a tort action of retaliatory discharge for filing a workmen's compensation claim "arises under the Indiana Workmen's Compensation laws," the plaintiffs conclude that the district court's jurisdiction is barred under 28 U.S.C. § 1445(c) which prohibits removal of a civil action in a state court arising under the workmen's compensation laws of that state.

In *People of the State of Illinois v. Kerr-McGee Chemical Corp.*, 677 F.2d 571, 575 (7th Cir.1982), this court set forth the principles to consider in determining whether a case involves a federal question warranting removal from a state court to a Federal court:

> "First among these principles is that the existence of a federal question must appear on the face of the plaintiff's complaint. Thus a defendant's assertion of an issue of federal law in the pleadings or in the petition for removal does not create a federal question. A plaintiff who has both federal and state causes of action may choose to ignore the federal claims and pursue only the state claims in state court. The defendant is entitled to have the case removed to federal court, however, if the plaintiff is attempting to avoid having an essentially federal claim adjudicated in a federal forum merely by artfully drafting the complaint in terms of state law. Nevertheless, the federal question must be an essential element of the plaintiff's complaint to provide grounds for removal."

*Id.* (citations omitted). Central to the plaintiffs' arguments that their complaint alleg-

es only a state cause of action and that the district court's jurisdiction is barred under 28 U.S.C. § 1445(c) is the assumption that Indiana would recognize a cause of action in tort for the retaliatory discharge of an employee covered by a collective bargaining agreement providing that the discharge was with just cause. In *Frampton v. Central Indiana Gas Company*, 260 Ind. 249, 297 N.E.2d 425 (1973), the Supreme Court of Indiana recognized a limited exception to the employment at will doctrine—an employment of indefinite duration which may be terminated, with or without cause, at the will of either party—with respect to discharges in retaliation for filing claims pursuant to the Indiana Workmen's Compensation Act. *Id.*, 297 N.E.2d at 428. The Indiana Supreme Court created a tort remedy for at-will employees to prevent employers from coercing employees into foregoing their workmen's compensation claims. The Court held that a discharge in retaliation for filing a workmen's compensation claim "would constitute an intentional, wrongful act on the part of the employer for which the injured employee is entitled to be fully compensated in damages." *Id.* The Court premised its holding upon Ind.Code § 22–3–2–15 (1971) which provides:

> "No contract or agreement, written or implied, no rule, regulation or other device shall, in any manner, operate to relieve any employer in whole or in part of any obligation created by this act."

According to the Court, a threat of discharge is a "device" as the term is used in section 22–3–2–15, and thus in clear contradiction of Indiana public policy.

■ Ind.Code § 22–3–2–15 specifically provides that "no *contract* ... shall, in any manner, operate to relieve any employer in whole or in part of any obligation created by this act." Furthermore, Ind.Code § 22–3–2–4 states, "[e]very contract of service between any employer or employee covered by [the Workmen's Compensation Act] ... shall be presumed to have been made subject to the provisions of this act...." Thus, under Indiana law, a collective bargaining agreement, which as a contract must comply with Ind.Code §§ 22–3–2–15 and 22–3–2–4, cannot operate to relieve the employer of its duty to compensate its employees for work-related injuries through insurance by allowing the employer to discharge an employee for filing workmen's compensation claims. *See Frampton*, 297 N.E.2d at 427–28. Specifically, the termination of an employee in retaliation for filing a workmen's compensation claim would not be considered for "just cause." As a result, under Indiana law the employee's right not to be discharged for filing a workmen's compensation claim is adequately protected by the collective bargaining agreement. The employee may pursue a contract remedy for being fired without "just cause," and may exercise his right to workmen's compensation in an unfettered fashion without being subject to reprisal. In view of the fact that the employee has a cause of action for breach of the collective bargaining agreement, the claim does not arise under the Indiana Workman's Compensation Act, and thus Federal jurisdiction is not barred under 28 U.S.C. § 1445(c).

■ In Indiana, employers cannot subvert the goals and public policy of the Workmen's Compensation Act by discharging the employee in retaliation for filing a Workmen's Compensation claim. We conclude that because the goals and policies of the Indiana Workmen's Compensation Act are protected by the collective bargaining agreement, *Frampton* does not apply to employees covered by collective bargaining agreements. Furthermore, because an allegation of discharge in retaliation for filing a workmen's compensation claim is an allegation of a breach of the collective bargaining agreement, it arises under section 301 of the Labor Management Relations Act rather than the Indiana Workmen's Compensation Act. *Cf., Allis-Chalmers Corp. v. Lueck*, —— U.S. ——, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). Section 301 of the Act confers jurisdiction upon federal district courts in cases involving breaches of collective bargaining agreements. 29 U.S.C. § 185(a); *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448,

77 S.Ct. 912, 1 L.Ed.2d 972 (1957). Removal of an action from a state court to a Federal court is proper where the real nature of the claim asserted is federal, whether or not so characterized by the plaintiff. *Jones v. General Tire & Rubber Co.*, 541 F.2d 660, 664 (7th Cir.1976). Because the plaintiff alleges an action arising under § 301 of the Act, a federal question was an essential element of the plaintiffs' complaint. In summary, we hold that the section 301 federal question—breach of the collective bargaining agreement—could be determined from the face of the plaintiffs' complaint and was an essential element of the plaintiffs' complaint. Therefore, removal of the claim against Elkhart Brass to the Federal district court was proper.

**B. Jurisdiction Over the Claim Against Wausau.**

The plaintiffs next argue that because Elkhart Brass failed to join Wausau in the removal petition, the petition is "legally defective" and the district court lacked subject matter jurisdiction over Wausau. The rule is that "where after removal a case is tried on the merits without objection and the federal court enters judgment, the issue in subsequent proceedings on appeal is not whether the case was properly removed, but whether the federal district court would have had original jurisdiction of the case had it been filed in that court." *Grubbs v. General Electric Credit Corp.*, 405 U.S. 699, 702, 92 S.Ct. 1344, 1347, 31 L.Ed.2d 612 (1972). In the present case, the record reveals that the Vantines participated in all the proceedings in the district court, including extensive discovery against each defendant, Elkhart Brass and Wausau, without protest and waited nearly four months after the district court entered summary judgment in favor of each defendant to file their Motion to Remand for lack of subject matter jurisdiction over Wausau. Because the plaintiffs failed to object to Wausau's failure to join the removal petition until after extensive discovery had been completed and then some four months after the entry of final judgment in Federal court, the question is whether the district court could have exercised original jurisdiction over Wausau. *Grubbs*, 405 U.S. at 702, 92 S.Ct. at 1347. As we held above, the cause of action against Elkhart Brass arose under the collective bargaining agreement; therefore there is a federal claim of sufficient substance on the face of this complaint. We also note that in order to establish pendent party jurisdiction over Wausau, the constitutional requirements of the federal judicial power, derived from Article III of the Constitution, must be satisfied, and any statutory limits on jurisdiction must be considered. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 371–72, 98 S.Ct. 2396, 2401–02, 57 L.Ed.2d 274 (1980); *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); *United States ex rel. Hoover v. Franzen*, 669 F.2d 433, 439–40 (7th Cir.1982); *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1353 (7th Cir.1985) (Coffey, J., *dissenting in part*). The constitutional prong requires a federal claim of "sufficient substance to confer subject matter jurisdiction on the court" and that both the federal and state claims arise from a "common nucleus of operative fact ... [such that the plaintiff] would ordinarily be expected to try [his claims] ... in one judicial proceeding...." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The statutory prong requires the district court to examine the specific statute that confers jurisdiction over the federal claim in order to determine whether "Congress in [that statute] has ... expressly or by implication negated" the exercise of jurisdiction over the particular non-federal claim. *Kroger*, 437 U.S. at 373, 98 S.Ct. at 2402. In determining whether the statutory prong has been satisfied, "[o]ur analysis turns on whether it can be demonstrated that Congress has intended that the particular pendent claim *not* be brought in federal court." *Hoover*, 699 F.2d at 441 n. 15 (emphasis added). The plaintiffs' allegation that the defendants acted in concert to retaliate against them for Kenneth Vantine's filing of his

workmen's compensation claim states a "common nucleus of operative facts." Thus, we hold that the constitutional prong requiring a federal claim of "sufficient substance to confer subject matter jurisdiction on the court" and that both the federal and state claims arise from a "common nucleus of operative fact ... [such that the plaintiff] would ordinarily be expected to try [his claims] ... in one judicial proceeding ..." (*Gibbs*, 383 U.S. at 725) is satisfied in this case. Turning to the statutory prong, examination of 29 U.S.C. § 185 reveals no evidence of Congressional intent that pendent claims not be brought in federal court when jurisdiction is based on this section; rather, pendent claims are commonly brought under this basis of jurisdiction. *See, e.g., Nedd v. United Mine Workers of America*, 556 F.2d 190 (3d Cir.1977), *cert. denied*, 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 757; *Federal Prescription Service, Inc. v. Amalgamated Meatcutters and Butcher Workmen of North America, AFL–CIO and its Local P–1149*, 527 F.2d 269 (8th Cir.1975). Since both the constitutional and statutory requirements for pendent party jurisdiction were satisfied in this case, we hold that the district court properly exercised pendent party jurisdiction over the claim against Wausau.[4]

## C. Summary Judgment as to Elkhart Brass.

Pursuant to Fed.R.Civ.P. 56(c) summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In the present case, the Vantines

allege that Elkhart Brass breached the collective bargaining agreement by discharging Kenneth Vantine in retaliation for filing a workmen's compensation claim. According to the Supreme Court in *DelCostello v. International Broth. of Teamsters*, 462 U.S. 151, 163, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983):

> "[a]n individual employee may bring suit against his employer for breach of a collective bargaining agreement. Ordinarily, however, an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement."

Moreover,

> "When the parties include an arbitration clause in their collective bargaining agreement, they choose to have the disputes concerning constructions of the contract resolved by an arbitrator. Unless the arbitral decision does not 'dra[w] its essence from the collective bargaining agreement,' a court is bound to enforce the award and is not entitled to review the merits of the contract dispute."

*W.R. Grace Co. v. Local Union 759*, 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983).

The record reveals that when Elkhart Brass placed Vantine on layoff status on January 28, 1981, the Union filed a grievance on his behalf. The Union contended "that employees off work because of an injury covered by workmen's compensation should not be treated the same as those on sick leave but should retain seniority rights indefinitely." Thus, under the Union's theory, Vantine should have been given an indefinite leave of absence under § 4(a) of the collective bargaining agreement rather than § 4(c) as the compa-

---

**4.** The plaintiffs further argue that the district court erred in failing to remand the pendent state law claim against Wausau because it raises a new issue of state law—"under what circumstances an employee can bring a separate claim against a workmen's compensation insurance carrier for tortious conduct in connection with their handling of a claim." The decision whether to decide state law claims after a federal cause of action is dismissed before trial is a matter for the district court to decide in exercis-

ing its discretion. *Rosado v. Wyman*, 397 U.S. 397, 404, 90 S.Ct. 1207, 1213, 25 L.Ed.2d 442 (1979). Contrary to the plaintiffs' assertion that their complaint raises a new issue of state law, for the reasons given in Section D of this opinion we hold that the plaintiffs' complaint fails to allege the elements of fraud or any other tort. Because their complaint does not raise new issues of state law, we find no error in the district court's failure to remand the plaintiffs' claim against Wausau to state court.

ny contended.[5] The Union and Elkhart Brass were unable to resolve their dispute and submitted the dispute to an arbitrator for final and binding resolution. The arbitrator found that Elkhart Brass acted in accordance with the collective bargaining agreement when it placed Vantine on sick leave status under § 4(c). Vantine fails to allege that the arbitral decision did not draw its essence from the collective bargaining agreement. *W.R. Grace Co.*, 103 S.Ct. at 2182. Thus, we are "bound to enforce the award and [are] not entitled to review the merits of the contract dispute." *Id.* Since Elkhart Brass, when terminating Vantine, followed the contract procedure approved by the arbitrator, Vantine cannot sustain an allegation of breach of the collective bargaining agreement. We therefore hold that the district court correctly granted summary judgment to Elkhart Brass.

**D. Summary Judgment as to Wausau.**

The Vantines' claim against Wausau is based upon *Baker v. American States Ins. Co.*, 428 N.E.2d 1342 (Ind.App.1981). In *Baker*, a carpenter who permanently injured his left eye alleged that the workmen's compensation insurance carrier fraudulently and knowingly made false statements to him stating that the examining physicians had rated the impairment to his left eye at 24.5 percent when in reality the impairment rating of his left eye was 62 percent. Baker discovered the true impairment rating after hiring an attorney to file and prosecute his claim with the Industrial Board for workmen's compensation benefits. Although Baker was awarded benefits on the basis of the 62% impair-

ment rating, he was required to pay attorney's fees out of the award. Baker, contending that the false statements were made to induce him to settle his compensation claim for less than it was worth, sued for attorney's fees, compensatory and punitive damages. The Indiana Court of Appeals held that the Indiana Workmen's Compensation Act was the exclusive remedy for attorney's fees when an insurer is "guilty of bad faith" in adjusting and settling a workmen's compensation claim. *Id.*, 428 N.E.2d at 1347. The court further held that the Act, "speaks to personal injury or death by accident on the job, but does not purport to prohibit actions by an employee against his employer's workmen's compensation insurance carrier for fraudulent misrepresentations made while the employee and the insurer are attempting to settle the claims." *Id.*, 428 N.E.2d at 1347. Baker's claim that the insurance carrier committed fraud, therefore, was not barred by the Indiana Workmen's Compensation Act and stated a claim upon which relief could be granted. Turning to the issue of damages, the Indiana Court of Appeals ruled that if Baker was able to substantiate his fraud claim, he could recover compensatory damages for mental anguish even though the mental anguish was unaccompanied by a physical injury caused by the insurer's fraud. *Id.* 428 N.E.2d at 1348–50.

 In the present case, the Vantines point to the following acts by Wausau as the basis for their claims:

"(1) Wausau acted in bad faith because it would not recognize that Dr. Echeverria was an authorized physician within the meaning of Ind.Code § 22–3–3–4.

---

**5.** Section 4(a):

"Leave of absence will be granted to an employee for reasons such as jury duty, attending conventions, or for voluntary duty in the defense of the United States, and for other valid reasons. Requests for relief of absence must be made in writing to the department foreman. The employee shall not lose his seniority status during such a leave of absence. All of the employee's benefits during a leave of absence will be the same as if he were laid off."

Section 4(c):

"Sick leave will be granted for a period of one (1) year, or a period of time equal to the employee's seniority, whichever is the shorter. After such a period of time, the employee will revert to a lay-off status and his job will be filled on a permanent basis. An employee on lay-off status referred to above, shall, upon release from his physician, have bumping rights according to his seniority. Such bump to be made in accordance with the lay-off procedure."

"(2) Wausau acted in bad faith by seeking out the services of Drs. Heller and Friedman instead of relying entirely upon the opinion of Dr. Echeverria.

"(3) Wausau acted in bad faith by way of the scheduling conflicts with Drs. Heller and Friedman.

"(4) Wausau acted in bad faith because it did not obtain a permanent partial impairment evaluation from Drs. Heller and Friedman and did not advise Vantine that it would not pay for the surgery performed by Dr. Echeverria.

"(5) Wausau improperly terminated Vantine's temporary total disability benefits."

"It is firmly established in Indiana that the essential elements of actual fraud are a material representation of past or existing facts, which representation is false, made with knowledge or reckless ignorance of its falsity, which causes a reliance to the detriment of the person relying upon it." *Baker*, 428 N.E.2d at 1348. We initially note that the failure to recognize Dr. Echeverria as an authorized physician, the failure to rely entirely upon the opinion of Dr. Echeverria, the failure to seek permanent partial impairment evaluations from Drs. Heller and Friedman, the failure to advise Vantine that it would not pay for the surgery and the termination of Vantine's temporary total disability benefits are not "representations" because they are not assertions of past or existing facts. Accordingly, these instances of alleged misconduct on the part of Wausau do not satisfy the element of "a material representation of past or existing facts." Moreover, there is no logical explanation for construing the scheduling conflicts as malicious, false statements. The sole purpose of the examinations was to allow Wausau to confirm the extent of Vantine's injuries, thus Wausau had no reason to intentionally misrepresent the examination dates. Furthermore, Vantine has no factual basis for asserting that he detrimentally relied on the statements because

the scheduling errors did not prevent him from undergoing the examinations; thus, the two allegations of scheduling conflicts fail to satisfy the requirement that the statements "cause[d] reliance to the detriment of the person relying upon it." *Id.*, 428 N.E.2d at 1348. We hold that Wausau was entitled to summary judgment on the unsupported allegations of bad faith because none of Wausau's actions constitute fraud under Indiana law.

 Plaintiffs urge this court to read *Baker* to allow recovery for other bad acts of the insurer that do not constitute fraud. The plaintiff has failed to cite, and our research has failed to reveal, an Indiana case in which an employee recovered from a workmen's compensation insurance carrier for damages caused by the carrier's bad acts other than fraud. To recover damages for mental anguish unaccompanied by a physical injury in Indiana, the plaintiff must prove that the defendant committed a tort [the host tort] which "by its very nature is likely to provoke an emotional disturbance."[6] *Baker*, 428 N.E.2d at 1348–50. "Harm arising from the infliction of emotional distress unsupported by a host cause of action is *damnum absque injuria* in Indiana." *Charlie Stuart Oldsmobile, Inc. v. Smith*, 177 Ind.App. 315, 357 N.E.2d 247, 255 n. 7 (1976). The conduct of a defendant when committing the host tort "is characterized as being willful, callous, or malicious, which may produce a variety of reactions, such as fright, shock, humiliation, insult, vexation, inconvenience, worry or apprehension." *Id.*, 357 N.E.2d at 254. A plaintiff may not recover if the defendant's actions were merely negligent. *Id.*, 357 N.E.2d at 255. The plaintiffs complain that "Wausau acted in bad faith because it would not recognize that Dr. Echeverria was an authorized physician within the meaning of Ind.Code 22–3–3–4." The failure to recognize Dr. Echeverria as an authorized physician cannot be characterized as a host tort because Indiana employers have a recognized right to question

---

6. See generally Comment, *Negligent Infliction of Emotional Distress: A Proposal For Recognized Tort Action*, 67 Marq.L.Rev. 557, 558–60 (1980).

whether a physician is an authorized physician. *See Perez v. United States Steel Corp.*, 172 Ind.App. 242, 359 N.E.2d 925, 926 (1977). Similarly, although the Vantines complain because Wausau required Vantine to be examined by Drs. Heller and Friedman, Wausau has a statutorily guaranteed right to require the employee to be examined by physicians and surgeons of its choice. Ind.Code § 22–3–3–6 (Burns 1984).[7] By enacting § 22–3–3–6, "the legislature intended to provide an avenue for the employer to discover the true physical conditions of the claiming employee." *Pedigo v. Miller*, 175 Ind.App. 97, 369 N.E. 2d 1100, 1102 (1977). Moreover, the plaintiffs cannot recover for alleged emotional distress caused by the scheduling errors because Wausau was merely negligent in committing errors in scheduling and since a scheduling error is not the sort of act which, by its very nature is likely to cause emotional distress. *See Charlie Stuart Oldsmobile*, 357 N.E.2d at 255. The plaintiffs' allegation that "Wausau acted in bad faith because it did not obtain a permanent partial impairment evaluation from Drs. Heller and Friedman" cannot constitute a host tort because the doctors were not required to make a permanent partial impairment evaluation; Ind.Code § 22–3–3–6 merely ensures that information discovered by examining physicians and surgeons will be equally shared by the parties in a dispute before the Industrial Board. Similarly, the alleged failure to inform Vantine that Wausau would not pay for the surgery does not constitute a host tort because the plaintiffs have failed to cite, and our research has failed to reveal, any statutory or common law duty on Wausau to determine before surgery whether it would be responsible for the expense. Finally, the

plaintiffs' allegation that Wausau wrongfully terminated Vantine's temporary total disability benefits cannot be characterized in any other manner than an ordinary, run-of-the-mill workmen's compensation claim. Because the Indiana Workmen's Compensation Act is the exclusive remedy for a workmen's compensation claim, Ind.Code § 22–3–2–6, Vantine cannot bring a separate cause of action for the termination of his temporary total disability benefits.

We hold that the Vantines' claim against Wausau fail to establish either a fraudulent misrepresentation or a host tort supporting a claim for emotional distress and conclude that the district court was correct in granting summary judgment to Wausau.

The district court's grant of summary judgment to the defendants is AFFIRMED.

---

7. Section 22–3–3–6 provides in pertinent part: "After an injury and during the period of claimed resulting disability or impairment, the employee, if so requested by his employer or ordered by the Industrial Board, shall submit himself to an examination at reasonable times and places by a duly qualified physician or surgeon designated and paid by the employer or by order of the Industrial Board.... If the employee refuses to submit himself to

or in any way obstruct such examinations his right to compensation and his right to take or prosecute any proceedings under this act shall be suspended until such refusal or obstruction ceases, and no compensation shall at any time be payable for the period of suspension unless in the opinion of the Industrial Board the circumstances justified the refusal for obstruction."