Ronald WAYCASTER, Plaintiff,

v.

AT & T TECHNOLOGIES, INC., Defendant.

No. 85 C 9903.

United States District Court, N.D. Illinois, E.D.

March 10, 1986.

Bernard K. Weiler, Pickett, Barnett, Larson, Michey, Wilson & Ochsenschlager, Aurora, Ill., for plaintiff.

Robert H. Joyce, Ronald L. Lipinski, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

For nearly twenty years, plaintiff Ronald Waycaster worked as a machine operator for defendant AT & T Technologies ("AT & T" or the "company") or its predecessor, Western Electric, Inc. In late 1984, AT & T fired Waycaster because of repeated work attendance problems. After failing to obtain relief through established grievance and arbitration procedures, Waycaster filed this action in state court for retaliatory discharge. The company removed the case to this Court claiming that Waycaster's state tort claim was preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) (1982). Waycaster has now filed a petition to remand his case to the state court and the company has moved to dismiss the case upon removal.[1] For the reasons set forth below, the petition is denied, and the motion to dismiss is granted.

### I. Factual Background

During the course of his employment with AT & T, Waycaster had medical problems with his feet which required corrective surgery on several occasions. He claimed that these problems were work-related since he had to spend a large amount of work time standing on a concrete floor. As a result of his foot problems, but for other reasons as well, Waycaster missed a substantial amount of time from work. Pursuant to AT & T's Total Attendance Program ("TAP")[2] which monitored its em-

1. On February 14, 1986, this Court issued an order denying the remand petition, but granting Waycaster leave to amend his complaint to state a claim under 29 U.S.C. § 185(a) (1982). This opinion elaborates the basis for our February 14 order. Waycaster never filed an amended complaint, so we now review the motion to dismiss his original complaint.

2. The TAP procedure was established by AT & T to formally monitor employee work attendance. TAP provides for a series of levels to which an employee with a record of absences is assigned.

After a specified number of absences, an employee advances to the next level and upon reaching the final level, he or she can be discharged. Waycaster had already reached the final level for employees in his seniority group in November 1984. His discharge was then recommended by a Termination Review Board which found that he had missed work 22% of the time in the preceding three year period and 17% of the time between 1981 and November 26, 1984, the date of his final absence.

ployees' work attendance, Waycaster was discharged for excessive absenteeism in November 1984. Throughout the course of his employment, Waycaster was covered under a collective bargaining agreement between the company and the Local 1942 of the International Brotherhood of Electrical Workers, AFL–CIO (the "Union"). At the time Waycaster was discharged, this agreement contained provisions prohibiting the firing of covered employees without just cause and established grievance and arbitration procedures for resolving labor-management disputes. Shortly after Waycaster's dismissal, the Union filed a grievance in his behalf contesting the job termination. The arbitrator upheld AT & T's firing of Waycaster.

Following his unsuccessful attempt to resolve his claim through arbitration, Waycaster filed this action against AT & T in the Circuit Court of Kane County in October 1985. The company filed a removal petition under 28 U.S.C. § 1441 based on its assertion that Waycaster's claim was essentially an action under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a)[3] for violation of the collective bargaining agreement. Waycaster filed a petition in this Court to remand his case to state court, arguing that his action fundamentally arises under state tort law.

## II. Removal Not Barred By § 1445

██ Waycaster's first argument in support of remand is that removal was improper because his cause arises under the Illinois workers' compensation laws. The federal removal statute prohibits the removal of a civil action from state court where that action arises under the workers' compensation laws of the forum state. 28 U.S.C. § 1445(c) (1982). Although Waycaster's contention would be correct if his case did arise under the Illinois statute governing workers' compensation, we find that he filed an independent tort action which was properly removable.

The complaint alleges that AT & T discharged Waycaster in retaliation for his pursuit of rights under the Illinois Workmen's Compensation Act. The tort of retaliatory discharge has been recognized in Illinois since 1978 when the Illinois Supreme Court declared that a cause of action existed for at-will employees who were terminated because they filed workers' compensation claims. *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 181, 23 Ill.Dec. 559, 563, 384 N.E.2d 353, 357 (1978). The court recognized that a cause of action in exception to the general common law rule allowing unfettered termination of at-will employees was necessary to vindicate the rights embodied in the workers' compensation statute. *Id.* at 185, 23 Ill.Dec. at 564, 384 N.E.2d at 358. However, this cause of action as established by the court clearly did not arise under a specific statutory provision, but under the common law of tort. *Id.* at 185, 23 Ill.Dec. at 565, 384 N.E.2d at 359.

Waycaster contends that he brought this action pursuant to ¶ 138.4(h) of the workers' compensation statute. He also argues that the *Kelsay* court's findings are irrelevant since ¶ 138.4(h) was not in effect at the time the *Kelsay* plaintiff was discharged and therefore did not control the court's decision. In 1975, the Illinois legislature added ¶ 138.4(h) to the statute, Ill. Rev.Stat. ch. 48, 138.4(h) (1983), to provide:

It shall be unlawful for any employer, insurance company or service or adjustment company to interfere with, restrain or coerce an employee in any manner whatsoever in the exercise of the rights or remedies granted to him or her by this Act or to discriminate, attempt to discriminate, or threaten to discriminate against an employee in any way because of his or her exercise of the rights or

---

**3.** That provision states:

(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

remedies granted to him or her by this Act.

It shall be unlawful for any employer, individually or through any insurance company or service or adjustment company, to discharge or to threaten to discharge, or to refuse to rehire or recall to active service in a suitable capacity an employee because of the exercise of his or her rights or remedies granted to him or her by this Act.

While this provision of the workers' compensation statute makes retaliatory discharge unlawful, it does not create a private cause of action for remedies under the act. Instead, as the *Kelsay* court recognized, the statute creates a *criminal* offense of retaliatory discharge. *See Kelsay,* 74 Ill.2d at 184–85, 23 Ill.Dec. at 564–65, 384 N.E.2d at 358–59; *see also Rubenstein Lumber Co. v. Aetna Life & Casualty Co.,* 122 Ill.App.3d 717, 719, 78 Ill.Dec. 541, 542–543, 462 N.E.2d 660, 661–662 (1st Dist. 1984) ("while the tort of retaliatory discharge exists in order to uphold and interpret public policy such as that mandated by the Workers' Compensation Act ... it is independent of the prohibition against retaliatory discharge which is found in the act itself.")

Furthermore, the Illinois Supreme Court's recent opinion in *Midgett v. Sackett-Chicago, Inc.,* 105 Ill.2d 143, 85 Ill. Dec. 473, 473 N.E.2d 1280 (1984), *cert. denied,* — U.S. —, 105 S.Ct. 3513, 87 L.Ed.2d 642 (1985), — U.S. —, 106 S.Ct. 278, 88 L.Ed.2d 243 (1985), which expanded the retaliatory discharge tort to employees covered by collective bargaining agreements, made no mention of ¶ 138.4(h).[4] It discussed the tort in terms of a common law action to protect statutory rights, as did the *Kelsay* opinion. *Id.* at 149, 85 Ill.Dec. at 476, 473 N.E.2d at 1283.

A final point of interest which supports the notion that the retaliatory discharge tort is a common law action rather than a statutory action is the fact that compensatory and punitive damages are recoverable in the tort action, *Kelsay,* 74 Ill.2d at 189, 23 Ill.Dec. at 567, 384 N.E.2d at 361, whereas the Illinois Workmen's Compensation Act limits an employee's monetary remedy solely to compensation provided for by specific statutory provisions. *See* Ill.Rev.Stat. ch. 48, ¶ 138.11 (1983); *Rubenstein Lumber Co.,* 122 Ill.App.3d at 719, 78 Ill.Dec. at 543, 462 N.E.2d at 662 ("compensation" under the Act not equated with compensatory damages).

Hence, since Waycaster's retaliatory discharge claim did not "arise" under the Illinois workers' compensation statute within the meaning of 28 U.S.C. § 1445(c), removal is not prohibited.

### III. Removal Under § 1441

 Waycaster also argues that even if § 1445(c) does not bar removal, his retaliatory discharge claim is not preempted by § 301 of the LMRA, and therefore removal under § 1441 should not be permitted. Section 1441 states in pertinent part:

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a) (1982). As made clear by the removal statute, this Court must be able to exercise original jurisdiction over the plaintiff's cause. Furthermore, removal based merely on the anticipation of a federal *defense* to the plaintiff's action is not permissible.[5] *Franchise Tax Board v.*

---

4. In *Lamb v. Briggs Manufacturing,* 700 F.2d 1092 (7th Cir.1983), the Court of Appeals for the Seventh Circuit held that the Illinois tort of retaliatory discharge would not be extended to employees covered by collective bargaining agreements if the Illinois Supreme Court were faced with the issue. The value of this opinion as controlling precedent for the purposes of

disposing of the present case is obviously diminished in light of the Illinois Supreme Court's decision in *Midgett.*

5. Since preemption technically constitutes a defense rather than an element of a plaintiff's cause of action, federal subject matter jurisdiction will not ordinarily be conferred in a remov-

*Construction Laborer's Vacation Trust,* 463 U.S. 1, 14, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983); *Mitchell v. Pepsi-Cola Bottlers, Inc.,* 772 F.2d 342, 344 (7th Cir. 1985).

To determine whether a federal question has been properly presented, the Court must examine the theory of recovery set forth in the plaintiff's complaint to see whether the Constitution or laws of the United States create an essential element of the claim (the so-called, "well-pleaded complaint" rule). *Franchise Tax Board,* 463 U.S. at 9–12, 103 S.Ct. at 2846–48. Furthermore, the existence of a federal controversy must ordinarily be determined by looking only to the face of the complaint, unaided by the defendant's removal petition. *Gully v. First National Bank,* 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936). However, this rule has been somewhat relaxed by the "artful pleading" exception to the well-pleaded complaint rule, since literal application of that rule could permit a deft plaintiff to foreclose the defendant's right to a federal forum merely by omitting any reference to those material facts and elements which would identify the complaint as being grounded in federal law. *Oglesby v. RCA Corporation,* 752 F.2d 272, 275 (7th Cir.1985). Under the artful pleading exception, the Court can properly look to the defendant's removal petition as well as the complaint in determining whether the plaintiff has actually pled a federal cause of action in the guise of a state claim. *Mitchell v. Pepsi-Cola Bottlers, Inc.,* 772 F.2d 342, 344 (7th Cir. 1985); *Oglesby,* 752 F.2d at 275.

In the present case, Waycaster failed to plead any facts regarding the just cause provisions of the collective bargaining agreement or that his termination was in violation of that agreement.[6] However, the company contends here that Waycaster's retaliatory discharge claim is essentially a federal labor action under § 301 of the LMRA. 29 U.S.C. § 185(a) (1982), which provides:

> (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

The company points out that since under the controlling collective bargaining agreement Waycaster could not be discharged without "just cause," his complaint is really for a breach of the agreement. After examining both the complaint and the removal petition, this Court is convinced that Waycaster has stated a claim cognizable under § 301. The collective bargaining agreement's just cause provision encompasses the concept of retaliatory discharge, and Waycaster was perfectly able, as he did, to pursue his claim in arbitration. Moreover, an employer's decision to terminate an employee in retaliation for the filing of workers' compensation claims clearly would not constitute just cause under a collective bargaining agreement. *See Van-*

---

al case where the defendant claims that federal law preempts a state cause of action. *Franchise Tax Board,* 463 U.S. at 14, 103 S.Ct. at 2848. However, some commentators have noted that the area of § 301 preemptions is one where the federal law has engulfed the entire field. C.A. Wright, *The Law of Federal Courts* 216 (4th Ed.1983); Note, *Federal Preemption, Removal Jurisdiction, and the Well-Pleaded Complaint Rule,* 51 U.Chi.L.Rev. 634, 661 (1984). "Federal law in these labor cases is not merely a defense to a state contract theory, but is the basis of all rights under the contract. If state law has been preempted in this sense, so that a state right of action has been replaced by a federal right of

action, plaintiff necessarily is stating a federal claim ... and the case is removable." C.A. Wright, *The Law of Federal Courts* 216 (4th ed. 1983). In light of the Supreme Court's recent pronouncements in *Allis-Chalmers v. Lueck,* discussed in the body of this opinion, this analysis would now appear to extend to state tort actions as well.

6. The complaint contains only an oblique reference to the collective bargaining agreement where Waycaster alleges the loss of existing benefits under a "general agreement" between the Union and AT & T.

*tine v. Elkhart Brass Manufacturing Co., Inc.,* 762 F.2d 511, 517 (7th Cir.1985).

## IV. Section 301 Preemption

In deciding that Waycaster's claim essentially states a claim under § 301, we necessarily find that § 301 preempts the tort of retaliatory discharge in Illinois. In doing so, we follow a recent trend which recognizes the wide-ranging preemptive impact of § 301 in cases heretofore within the proper jurisdiction of state law. *See, e.g., Allis-Chalmers Corp. v. Lueck,* — U.S. —, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985); *Mitchell v. Pepsi-Cola Bottlers, Inc.,* 772 F.2d 342 (7th Cir.1985); *Vantine v. Elkhart Brass Manufacturing Co., Inc.,* 762 F.2d 511 (7th Cir.1985); *Oglesby v. RCA Corporation,* 752 F.2d 272 (7th Cir.1985).

In *Midgett v. Sackett-Chicago, Inc.,* 105 Ill.2d 143, 85 Ill.Dec. 473, 473 N.E.2d 1280 (1984), *cert. denied,* — U.S. — 105 S.Ct. 3513, 87 L.Ed.2d 642 (1985), — U.S. —, 106 S.Ct. 278, 88 L.Ed.2d 243 (1985), a sharply-divided Illinois Supreme Court extended the availability of the retaliatory discharge tort for at-will employees first established in *Kelsay v. Motorola, Inc.* to include employees covered by a collective bargaining agreement. However, the *Midgett* court specifically declined to decide whether federal labor law preempts state remedies for the retaliatory discharge of a unionized employee.[7] Shortly after the *Midgett* decision was issued, the United States Supreme Court provided guidelines for evaluating the preemptive force of § 301 with respect to state law torts connected to employer-employee relationships under collective bargaining agreement. *Allis-Chalmers Corp. v. Lueck,* — U.S. —, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).

In *Lueck,* the plaintiff filed suit against his employer in Wisconsin court for the bad faith handling of an insurance claim under an insurance plan established by a collective bargaining agreement. The plaintiff never attempted to file a grievance on his claim as provided for in the collective bargaining agreement. The employer filed a successful summary judgment motion on the grounds that the suit arose under § 301 and that any state law claim in this context was preempted by § 301, but the Wisconsin Supreme Court reversed, distinguishing claims for violation of a labor contract from the independent tort for bad faith involving an insurance contract. The United States Supreme Court reversed, noting that in order for the policy goals of achieving a uniform federal labor law with respect to labor contracts to be effectuated, the preemptive scope of § 301 must extend beyond state contract actions to encompass state tort claims which have implications regarding the enforcement of collective bargaining agreements. *Lueck,* 105 S.Ct. at 1911. Thus, the Court concluded that a state tort action will be preempted by § 301 whenever the interpretation of a collective bargaining agreement underlies any finding of tort liability. *Id.* at 1915.

The *Lueck* Court also expressed strong concerns about permitting the continued existence of state tort actions which would allow employees to avoid the dispute resolution procedures ordinarily established under collective bargaining agreements: As Justice Blackmun noted:

> Since nearly any alleged willful breach of contract can be restated as a tort claim for breach of a good-faith obligation under a contract, the arbitrator's role in every case could be bypassed easily if § 301 is not understood to pre-empt such claims. Claims involving vacation or overtime pay, work assignment, *unfair discharge*—in short, the whole range of disputes traditionally resolved

---

7. Shortly following the *Midgett* decision, the Illinois Supreme Court held that provisions of the Railway Labor Act, 45 U.S.C. §§ 151–164 (1982) preempt the state tort of retaliatory discharge for employees covered by the Act. *Koehler v. Illinois Central Gulf Railroad Co.,* 109 Ill.2d 473, 480, 94 Ill.Dec. 543, 488 N.E.2d 542 (1985). We find it likely that, if confronted with the issue presented in this case, the Illinois Supreme Court would hold that § 301 of the LMRA also preempts state retaliatory discharge claims since the preemptive force of § 301 and of the Railway Labor Act are quite similar. *Lancaster v. Norfolk & Western Railway Co.,* 773 F.2d 807, 816–17 (7th Cir.1985).

through arbitration—could be brought in the first instance in state court by a complaint in tort rather than in contract. A rule that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness ... as well as eviscerate a central tenet of federal labor-contract law under § 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance.

*Id.* at 1916–16 (emphasis added) (citation omitted).

Similarly, the Court of Appeals for the Seventh Circuit held that an Indiana tort action for retaliatory discharge actually asserted a federal claim under § 301 in *Vantine v. Elkhart Brass Manufacturing Co., Inc.*, 762 F.2d 511 (7th Cir.1985). In that case, the court approved the removal and dismissed a case filed by an Indiana employee and his wife alleging that his employer terminated him for pursuing workers' compensation claims for injuries he sustained on the job. While not specifically dealing with the question of § 301 preemption, the court held that since the employee was covered by a collective bargaining agreement, his interests in pursuing workers' compensation benefits without reprisal were adequately protected by the labor agreement's "just cause" provision. The *Vantine* decision is not entirely dispositive of the present case, however, since the court relied in part on the assumption that Indiana law did *not* extend retaliatory discharge actions to employees covered by collective bargaining agreements, as did the Illinois Supreme Court in *Midgett.* Nevertheless, the Seventh Circuit's pronouncements in *Vantine,* and in other cases, *see, e.g., Oglesby v. RCA Corporation,* 752 F.2d 272, 276 (7th Cir.1985); *Mitchell v. Pepsi-Cola Brothers, Inc.,* 772 F.2d 342, 345–47 (7th Cir.1985), indicate a strong trend toward protecting the extensive preemptive scope of § 301. Moreover, this trend has continued in the context of

the Illinois retaliatory discharge tort as exhibited by several recent opinions from other district courts in Illinois. *See Hughes v. Pittsburgh Testing Lab,* 624 F.Supp. 54 (N.D.Ill.1985); *Lingle v. Norge Division of Magic Chef, Inc.,* 618 F.Supp. 1448 (S.D.Ill.1985); *Folden v. Zeigler Coal Co.,* No. 85–5479, slip op. (S.D.Ill. Nov. 5, 1985); *Daugherty v. Lucky Stores, Inc.,* No. 84–1382 (C.D.Ill. Sept. 24, 1985).

■ Application of the principles set forth by the Supreme Court in *Lueck* compels us to find that § 301 of the LMRA preempts the Illinois retaliatory discharge tort for employees covered by collective bargaining agreements established in *Midgett.* While we are mindful of the *Lueck* court's admonitions that § 301 preemption of state law torts must be resolved on a case-by-case basis, 105 S.Ct. at 1916, we find it inescapable that state remedies for retaliatory discharge of a unionized employee remain "inextricably intertwined" with the collective bargaining agreement's just cause provision. As such, to allow an independent tort action for these employees might result in an unacceptable loss of uniformity in federal labor law with respect to disputes regarding termination of employment. In the present case, Ronald Waycaster was protected in his employment by a negotiated collective bargaining agreement which provided specific procedures for challenging a discharge which he deemed to be without just cause. An employer's decision to terminate an employee in retaliation for exercising rights established under state workers' compensation laws is repugnant to state and federal policy alike. However, where federal labor policy mandates a uniform system for the resolution of management-labor disputes such as this one, the state claim must yield. Furthermore, the state policy of providing rights to compensation for injured workers is subsumed in the federal labor policy providing protection from the violation of collective bargaining agreements.[8]

---

8. We recognize that while unionized employees may be able to vindicate their rights to compen- sation for a retaliatory discharge under collective bargaining agreements, they will no longer

### V. AT & T's Motion to Dismiss

 Finally, the company has moved to dismiss Waycaster's complaint for failure to state a claim under § 301. Fed.R. Civ.P. 12(b)(6). When a unionized employee, following an unsuccessful arbitration, sues his employer under § 301 for an alleged breach of the collective bargaining agreement, he must first show that the grievance process has been subverted in some way. *Huffman v. Westinghouse Electric Corp.,* 752 F.2d 1221, 1223 (7th Cir.1985). The most frequent method for attacking the validity of the grievance procedure is by showing that the employee's union breached its duty of fair representation. *Id.* In the present case, Waycaster alleged no facts regarding the inadequacy of the grievance process and offered nothing to support a claim for breach of the duty of fair representation. In his response to the motion to dismiss, Waycaster raised for the first time an argument that he did not receive fair representation from the Union. He also submitted at that time an affidavit containing some facts alleging unfair treatment. However, when this Court granted leave to file an amended complaint stating a § 301 claim as Waycaster stated he could, he failed to reformulate these allegations into a new complaint. If Waycaster is not willing to reconsider his complaint in light of these late allegations, we certainly will not do so. Since Waycaster's complaint fails to allege any facts which would support a direct claim against his employer under § 301, the company's motion to dismiss is granted.

### VI. Conclusion

Based on the discussion above, we hereby deny Waycaster's petition to remand his cause to the Circuit Court of Kane County. Furthermore, since Waycaster's complaint

fails to state a § 301 claim, the motion to dismiss is granted. It is so ordered.

---

have an opportunity to recover punitive damages pursuant to the Court's opinion. Similar concerns were expressed by the dissenting justices in *Midgett* who suggested that a state tort action might still be available in the very limited circumstances where an arbitrator finds that an employee has been discharged with a retaliatory motivation. *Midgett v. Sackett-Chicago,* *Inc.,* 105 Ill.2d 143, 156, 85 Ill.Dec. 475, 482, 473 N.E.2d 1280, 1287 (1985) (Moran, J. dissenting). Presumably, this action would be for punitive damages only, since adequate compensatory remedies would be recovered through the arbitrator's award. We express no opinion today on the implications of the court's suggestion.