Annie B. JONES, individually and as
Guardian of Robert H.
Jones, Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE
COMPANY, Defendant.

No. S86–424.

United States District Court,
N.D. Indiana,
South Bend Division.

July 6, 1987.

John D. Ulmer, Goshen, Ind., Frank E. Tolbert, Logansport, Ind., for plaintiff.

Edward N. Kalamaros, South Bend, Ind., for Nat. Union Fire Ins. Co.

Michael C. Cook, Dale W. Eikenberry, Indianapolis, Ind., for Schmock Bros. Co.

James D. Witchger, Indianapolis, Ind., for Union Oil Co.

## MEMORANDUM AND ORDER

MILLER, District Judge.

Plaintiff Annie Jones filed this suit on July 24, 1986 in her own behalf and as guardian for her husband, Robert H. Jones, against National Union Fire Insurance Company ("National Union"). National Union was the workers' compensation insurer for Mr. Jones' employer, Joy Manu-

facturing Company. Oral argument was held on June 30, 1987 on National Union's motion to dismiss for want of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1), or, alternatively, for summary judgment. Fed.R.Civ.P. 56.

This case presents two questions for resolution under Indiana law:

1. Whether an employee's complaint against his employer's insurer for bad faith conduct with respect to its handling of an occupational diseases claim and the employee's third party action states a claim that does not fall within the exclusive jurisdiction of Indiana's Industrial Board; and

2. Whether an occupational diseases insurer can waive its statutory lien on monies received by its insured's employee from the employee's claim against third parties.

For the reasons set forth below, the court concludes that both questions must be answered negatively, and that the defendant is entitled to summary judgment.

## I.

National Union contended that Mrs. Jones' claims are, pursuant to Indiana law, within the exclusive jurisdiction of the Indiana Industrial Board, and that this court thus lacks jurisdiction over the subject matter of her complaint. The court rejected that argument in a memorandum order entered on October 23, 1986.

### A.

■ Mrs. Jones invokes federal jurisdiction based on diversity of citizenship. 28 U.S.C. § 1332 affords the courts of the United States subject matter jurisdiction over suits between citizens of different states in which the amount in controversy exceeds $10,000.00. State law cannot enlarge or contract that grant of jurisdiction. *Beach v. Owens-Corning Fiberglas Corp.*, 728 F.2d 407 (7th Cir.1984); *Begay v. Kerr-McGee Corp.*, 682 F.2d 1311 (9th Cir.1982). State law may provide that Mrs. Jones can state no claim for relief under Indiana law from any entity other than the Industrial

Board; if Indiana law so provides, this court will be bound to so hold. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Such a determination would be based upon the strength of Mrs. Jones' state law claim, however, and not upon any want of federal jurisdiction. Jurisdiction under § 1332 is based upon the parties' citizenship, rather than upon the law of the forum state or even upon the jurisdictional limits governing the courts of the forum state.

### B.

■ A court exercising diversity jurisdiction must, however, be able to find that the parties before it are of diverse citizenship. *Goldstick v. ICM Realty*, 788 F.2d 456 (7th Cir.1986). In the order of October 23, 1986, the court informed the parties that the record before it was insufficient to allow such a finding. The pleadings established that the plaintiff was a resident of the State of Indiana, and that New York was the principal place of business of National Union. The pleadings were silent, however, as to Mrs. Jones' citizenship and as to the place of National Union's incorporation; a corporation is a citizen of the state of its incorporation and of the state of its principal place of business. Accordingly, the court afforded the parties thirty days within which to submit proof of citizenship.

The plaintiff submitted an affidavit establishing that Mrs. Jones is a citizen of the State of Indiana. No proof of National Union's citizenship had been submitted by the time of the summary judgment hearing some eight months later, however. Dismissal of a claim for want of sufficient allegations of diversity is "overkill", *Hemmings v. Barian*, 822 F.2d 688, 697 (7th Cir., 1987), so the court raised the issue anew at the hearing. Counsel agreed that National Union was incorporated in the Commonwealth of Pennsylvania.

Based on that agreement and the materials before it, the court finds that it has jurisdiction over Mrs. Jones' claims.[1]

## II.

■ In a summary judgment motion, the movant must demonstrate, by way of pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, that (1) no genuine issue of material fact exists for trial, and (2) the movant is entitled to judgment as a matter of law. *Munson v. Friske,* 754 F.2d 683 (7th Cir. 1984). If the motion's opponent would bear the burden of proof at trial on the matter that forms the basis of the summary judgment motion, the burden of proof shifts to the motion's opponent if the movant makes its initial showing, and the motion's opponent must come forth and produce affidavits, depositions or other admissible documentation to show what facts are actually in dispute. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment should be granted only if no reasonable jury could return a verdict for the motion's opponent. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ When the parties dispute the facts, the parties must produce proper documentary evidence to support their contentions. The parties cannot rest on mere allegations in the pleadings, *Posey v. Skyline Corp.,* 702 F.2d 102 (7th Cir.), *cert. denied* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983), or upon conclusory statements in affidavits. *First Commodity Traders v. Heinold Commodities,* 766 F.2d 1007 (7th Cir.1983). A party need not try its case by affidavit, but it must set forth some facts from which the court reasonably can infer that the party would be able to produce some evidence at trial to support its theory. *Matter of Morris Paint and Varnish Co.,* 773 F.2d 130 (7th Cir.1985).

Any permissible reasonable inferences from the documentary evidence must be viewed in the light most favorable to the motion's opponent. *Matsushita Electronics Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

### A.

The parties, while not disputing the basic facts giving rise to this litigation, disagree considerably over the inferences to be drawn from those basic facts. The basic facts, with reasonable inferences drawn in favor of Mrs. Jones, the nonmoving party, are as follows:

#### 1.

Robert Jones was overcome by toxic fumes while working for Joy Manufacturing on September 21, 1981. Mrs. Jones, representing herself and her husband, filed a claim against Joy Manufacturing pursuant to Indiana's Workmen's Occupational Disease Act. IND.CODE 22–3–7. Memorial Hospital, where Mr. Jones had been hospitalized, refused to release Mr. Jones' medical records without authorization. That authorization was not given until March, 1982. Mr. Jones apparently was being treated for substance abuse problems during that period.

On March 19, 1982, National Union paid Mr. Jones $1,540.00, representing eleven

---

1. Neither the parties nor the court have addressed the following portion of 28 U.S.C. § 1332(c):

   ... in any direct action against the insurer of a policy or contract of liability insurance; whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business.

   The parties have submitted no information concerning the citizenship of National Union. However, the court does not understand Mrs. Jones' complaint to attempt to constitute a "direct action" against the insurer on the basis of the liability insurance contract. See *Beckham v. Safeco Ins. Co. of America,* 691 F.2d 898 (9th Cir.1982). The court understands Mrs. Jones' complaint to attempt to state a claim for an independent tort by the insurer, or for a breach of a contract implied by Indiana's Occupational Diseases Act. See *Carpentino v. Transport Ins. Co.,* 609 F.Supp. 556 (D.Conn.1985).

weeks of temporary total disability payments.

Mr. Jones' hospital records reflected a diagnosis of "mixed organic mental disorder", a condition related to Mr. Jones' inhalation of toxic chemicals at Joy Manufacturing. The records further reported that Mr. Jones was "resisting treatment" and drinking alcoholic beverages that he concealed in his hospital bed. National Union demanded an independent medical evaluation.

National Union continued partial payment on several occasions, but no settlement was reached until October 24, 1984.

### 2.

Starting in December, 1981, the Joneses' attorney [2] began to investigate a products liability suit against Union Oil Company of California and Schmock Brothers Coal & Oil Co., the producers of the chemicals that Mr. Jones inhaled. The Joneses' attorney sought the assistance of Joy Manufacturing and National Union in this investigation, suggesting that they would benefit from a successful products liability suit, because they could recoup all benefits they paid to Mr. Jones. The attorney asked Joy Manufacturing and National Union to help by: (a) preserving all chemicals; (b) hiring a chemist to investigate the chemicals' toxicity; (c) allowing private conferences with Joy employees who might be witnesses; (d) allowing the Joneses' attorney to conduct a private inspection of the plant; (e) helping to locate experts; and (f) advancing litigation costs and fees, eventually with the proposition that all such advancements would be credited against National Union's payments to the Joneses.

National Union and Joy Manufacturing declined to provide the Joneses' attorney with such assistance. Indeed, they conducted themselves in such a manner as to make more difficult the preparation of the products liability suit. They objected to the Joneses' questions during depositions; they refused to allow private inspection of the plant; they refused to allow private interviews of Joy employees; they refused to advance litigation costs. The Joneses came to believe that National Union's conduct should preclude it from benefitting from any success they might have in their products liability suit.

Drawing all reasonable inferences in Mrs. Jones' favor, as the court must in deciding this summary judgment motion, the court must infer that by this conduct, National Union acted in bad faith. The materials before the court contain a suggestion that National Union acted as it did out of concern that its insured, Joy Manufacturing, might be exposed to liability. At the summary judgment hearing, the court inquired of National Union's counsel as to the theory under which Joy Manufacturing might have been liable to the Joneses, and he could suggest none, other than a separate lawsuit by the Joneses.[3] Indiana law would seem to preclude any such claim. See *Tribbett v. Tay Mor Indus., Inc.*, 471 N.E.2d 332 (Ind.App.1984); *Blade v. Anaconda Aluminum Co., Inc.*, 452 N.E.2d 1036 (Ind.App.1983); *Cunningham v. Aluminum Co. of America, Inc.*, 417 N.E.2d 1186 (Ind.App.1981). See also *North v. United States Steel Corp.*, 495 F.2d 810 (7th Cir.1974).

Mrs. Jones, acting in her own behalf and as guardian for Mr. Jones, filed a products liability suit in the courts of Indiana against Union Oil Company and Schmock Brothers. That suit resulted in a verdict for Mr. Jones in the sum of $650,000.00 and a verdict for Mrs. Jones on her consortium claim in the sum of $250,000.00. The parties to that suit then settled the case for $700,000.00. Two settlement checks were

---

**2.** Mr. and Mrs. Jones were represented in the dealings that led up to this suit by attorney Gene M. Jones, who plainly provided his clients with outstanding legal services. The quality of his work is evidenced by the verdict and settlement he obtained on the Joneses' behalf despite the conduct of National Union, detailed below. Nonetheless, to avoid the confusion inherent in textual reference to more than one "Mr. Jones", the text of this memorandum treats Gene Jones as being nameless; he is referred to only as "the Joneses' attorney".

**3.** Suggestion was also made that an OSHA claim might be developed through cooperation. No further explanation was offered.

issued. The smaller check, made jointly payable to the Joneses, their attorney and National Union in the sum of $70,000.00, was intended to cover any lien National Union held by virtue of IND.CODE 22–3–7–36.[4] National Union claims a lien in the sum of $23,757.56. National Union was not notified of the settlement until after the settlement was finalized.[5]

National Union refused to negotiate the check, apparently due to concern that doing so would strengthen the Joneses' waiver argument.

## B.

In her complaint in this court, Mrs. Jones claims that National Union acted in bad faith: (a) in the handling of Mr. Jones' occupational disease claim, (b) in its conduct with respect to the Joneses' products liability claims against parties other than National Union's insured, and (c) in refusing to endorse the settlement check for a period of time, effectively depriving Mrs. Jones of, at least, the amount in excess of National Union's claimed lien. Mrs. Jones also seeks a declaratory judgment that National Union has waived its claim to a statutory lien against the settlement of the third-party case.

National Union counterclaimed against Mrs. Jones, asserting its lien. National Union also filed a third-party complaint against Union Oil Company of California and Schmock Brothers Coal & Oil Co., Inc., the defendants in the Joneses' products liability suit, for failing to notify National Union of the settlement.

## C.

On September 16, 1986, Mrs. Jones moved to deposit the check with this court pursuant to Fed.R.Civ.P. 67, and moved the court to order National Union to negotiate the check. The court denied Mrs. Jones' motion on October 23, 1986, finding the relief she sought to be beyond the scope of Rule 67. The court suggested that the check's negotiation appeared to be in the best interests of all of the parties, and that they might explore some agreement to achieve that end.

At the hearing on the summary judgment motion, counsel informed the court that such an agreement ultimately had been reached, with the $23,757.56 claimed by National Union placed in escrow and the balance turned over to Mrs. Jones.

## III.

The Joneses' original claim was filed pursuant to the Indiana Workmen's Occupational Disease Act. IND.CODE 22–3–7. The Occupational Disease Act is separate from Indiana's Workmen's Compensation Act, IND.CODE 22–3–2–1 *et seq.*, but the two acts contain several identical provisions, and the parties tacitly agree that interpretation of such provisions of the latter governs the former.

Section 6 of the Occupational Disease Act provides:

> The rights and remedies herein granted to an employee subject to this act on account of disablement or death by occupational disease arising out of and in the course of the employment shall exclude all other rights and remedies of such employee, his personal representatives, dependents, or next of kin, at common law or otherwise, on account of such disablement or death.

IND.CODE 22–3–7–6. National Union contends that Section 6 limits Mrs. Jones to

---

**4.** IND.CODE 22–3–7–36 provides, in pertinent part:

> If the employee or his dependents shall agree to receive compensation, because of an occupational disease arising out of and in the course of the employment, from the employer or such employer's occupational disease insurance carrier, or to accept from the employer or such employer's occupational disease insurance carrier by loan or otherwise, any payment on account of such compensation or

institute proceedings to recover the same, the said employer or such employer's occupational disease insurance carrier shall have a lien upon any settlement award, judgment or fund out of which such employee might be compensated from the third party.

**5.** The failure to notify, while of some importance under other circumstances, *see, e.g., Dearing v. Perry*, 499 N.E.2d 268 (Ind.App.1986), is insignificant in this case.

the remedies provided by the Occupational Diseases Act. Section 24(b) of the Act provides that remedy: when the Industrial Board finds that the employer or its insurer has acted in bad faith or has failed to act diligently, the Board shall assess attorney fees of not less than $150.00 to the claimant as part of the award. IND CODE 22–3–7–24(b). That, National Union contends, is Mrs. Jones' sole remedy.

Mrs. Jones argues that Section 6 only excludes other remedies "on account of [Mr. Jones'] disablement or death", and does not foreclose suit for acts of intentional misconduct or bad faith in handling a compensation claim.

### A.

■ The issue of an employee's right to maintain an action at law against an insurer for bad faith conduct in the provision of workmen's compensation benefits has not produced uniform resolution among the states. In *Carpentino v. Transport Ins. Co.*, 609 F.Supp. 556 (D.Conn.1985), the court was required to determine, unaided by state decisional law, whether the plaintiff could maintain an action against an insurer for bad faith termination of compensation payments in violation of Connecticut's workmen's compensation procedures. The court canvassed the laws of several states and found that at least seven states had found such claims to fall within the exclusive jurisdiction of their workmen's compensation boards,[6] while at least eight states allowed such independent actions.[7] The court found the law to be uncertain in two states—Texas and Indiana. 609 F.Supp. at 561.

The sole guidance to be found in the decisions of the courts of Indiana is *Baker v. American States Ins. Co.*, 428 N.E.2d 1342 (Ind.App.1981), upon which Mrs. Jones places her principal reliance. In *Baker*, a workman's compensation insurer misrepresented to a claimant the results of the claimant's physical examination. The *Baker* court held that the Workmen's Compensation Act provided the exclusive remedy for any claim for attorneys' fees due to the insurer's bad faith, "but it does not purport to prohibit actions by an employee against his employer's workmen's compensation carrier for fraudulent misrepresentations made while the employee and the insurer are attempting to settle the claim". 428 N.E.2d at 1347. By the same reasoning, Mrs. Jones argues, IND.CODE 22–3–7–6 does not bar her claim against National Union.

National Union views *Baker v. American States Ins. Co.* as authorizing suits for fraud, but no more. In support of its position, it points to *Vantine v. Elkhart Brass Mfg. Co.*, 762 F.2d 511 (7th Cir.1985), in which the plaintiff had attempted to assert a bad faith claim against his employer's workmen's compensation carrier, Wausau

**6.** *Escobedo v. American Employers Ins. Co.*, 547 F.2d 544 (10th Cir.1977) (applying New Mexico law); *Whitten v. American Mut. Liability Ins. Co.*, 468 F.Supp. 470 (D.S.C.1977), *aff'd in mem. op.*, 594 F.2d 860 (4th Cir.1979) (applying South Carolina law); *Hixon v. State Compensation Fund*, 115 Ariz. 392, 565 P.2d 898 (1977); *Old Republic Ins. Co. v. Whitworth*, 442 So.2d 1078 (Fla.App.1983); *Bright v. Nimmo*, 253 Ga. 378, 320 S.E.2d 365 (1984); *Robertson v. Travelers Ins. Co.*, 95 Ill.2d 441, 69 Ill.Dec. 954, 448 N.E.2d 866 (1983); *Jadofsky v. Iowa Kemper Ins. Co.*, 120 Wis.2d 494, 355 N.W.2d 550 (1984). Further,

California and Alabama would apparently bar an independent action in cases that merely allege "bad faith" on the part of the insurer, although perhaps in outrageous cases of insurance company misconduct an independent action would be allowed. *See Palmer v. R.L. Kautz & Co.*, 141 Cal.App.3d 155, 190 Cal.Rptr. 139, 144 (1983); *Everfield v. State Compensa-*

*tion Ins. Fund*, 115 Cal.App.3d 15, 171 Cal. Rptr. 164, 165–66 (1981); *Bearden v. Equifax Servs.*, 455 So.2d 836 (Ala.1984).

*Carpentino v. Transport Ins. Co.*, 609 F.Supp. 556, 560 (D.Conn.1985) [footnote omitted].

**7.** *Hollman v. Liberty Mut. Ins. Co.*, 712 F.2d 1259 (8th Cir.1983) (applying South Dakota law); *Reed v. Hartford Accident & Indemnity Co.*, 367 F.Supp. 134 (E.D.Pa.1973) (applying Pennsylvania law); *Stafford v. Westchester Fire Ins. Co.*, 526 P.2d 37 (Alaska 1974), *overruled on other grounds, Cooper v. Argonaut Ins. Co.*, 556 P.2d 525 (Alaska 1976); *Savio v. Travelers Ins. Co.*, 678 P.2d 549 (Colo.App.1983); *Gibson v. National Ben Franklin Ins. Co.*, 387 A.2d 220 (Me.1975); *Broaddus v. Ferndale Fastner Div.*, 84 Mich.App. 593, 269 N.W.2d 689 (1978); *Birkenbuel v. Montana State Compensation Ins. Fund*, 687 P.2d 700 (Mont.1984); *DeMarco v. Federal Ins. Co.*, 99 A.D.2d 114, 472 N.Y.S.2d 464 (1984).

Insurance Company. The plaintiff alleged that Wausau (1) refused to recognize his doctor as an authorized physician, (2) insisted upon examination by other doctors, (3) created scheduling conflicts for his examinations, (4) did not tell him that it would not pay for his surgery, and (5) improperly terminated his temporary total disability benefits. The Seventh Circuit held that these allegations stated no cause of action for fraud under Indiana law.

In the portion of the opinion on which National Union places its greatest reliance[8], the *Vantine* court addressed the plaintiff's argument that *Baker* allows recovery for other bad acts of the insurer that do not constitute fraud. The court responded, "The plaintiff has failed to cite, and our research has failed to reveal, an Indiana case in which an employee recovered from a workmen's compensation carrier for damages caused by the carrier's bad acts other than fraud." 762 F.2d at 521.

That comment did not conclude the *Vantine* court's analysis, however. The court went on to analyze the plaintiff's allegations. Under Indiana law, a plaintiff must prove what the *Vantine* court characterized as a "host tort" to recover damages for mental anguish unaccompanied by physical impact. None of the plaintiff's allegations of bad faith constituted an independent tort other than "an ordinary, run-of-the-mill workmen's compensation claim." 762 F.2d at 522. In light of this subsequent analysis, the court rejects National Union's argument that *Vantine* limited *Baker* to fraud claims.[9]

**B.**

Although *Baker* is not limited to fraud claims, the court concludes that *Baker* does not allow Mrs. Jones to maintain these claims in the face of IND.CODE 22-3-7-6.

**1.**

Mrs. Jones, unlike the plaintiff in *Baker*, and like the plaintiff in *Vantine*, states no claim for fraud. One alleging fraud must allege the making of a false, material representation of past or existing facts, *Holtzclaw v. Bankers Mut. Ins. Co.*, 448 N.E.2d 55 (Ind.App.1983); *Baker v. American States Ins. Co.*, *supra*, and Mrs. Jones has alleged no representations by National Union. She has no fraud claim, and has not contended that she has.

Mrs. Jones argues that she has an independent cause of action against National Union for its bad faith conduct. She reasons as follows:

a. Indiana's courts have held that the Workmen's Compensation Act and Occupational Diseases Act are to be construed as in the nature of a contract between the employer and the employee.

b. The term "employer", when used within the Occupational Diseases Act, includes the employer's insurer. IND. CODE 22-3-7-9(a).

c. Accordingly, Mrs. Jones reasons, the Occupational Diseases Act must be construed as in the nature of a contract between the employer's insurer (who is the same as the employer in the Act's terms) and the employee.

---

**8.** National Union also relies upon *Wolfe v. Commercial Union Ins.*, 792 F.2d 87 (7th Cir.1986), which involved facts and issues dissimilar to those involved here. The plaintiff in *Wolfe* relied upon *Baker*, as does Mrs. Jones, but due to the cases' dissimilarity, the court finds no guidance in *Wolfe*.

**9.** The court notes, however, that the Indiana courts may view *Baker* as having created only that limited exception:

Ordinarily, when a party files a workmen's compensation claim which is thereafter approved by the Full Industrial Board, such action represents a valid and binding election to receive workmen's compensation benefits as the claimant's sole and exclusive remedy against the employer.... One exception exists. A party to a workmen's compensation agreement can challenge the validity of that agreement in an independent tort action for fraud. *Gayheart v. Newnam Foundry Company, Inc.*, (1979) 271 Ind. 422, 393 N.E.2d 163; *Baker v. American States Insurance Company*, (1981) Ind.App., 428 N.E.2d 1342; [*Home Packing and Ice Co. v.*] *Cahill*, [71 Ind.App. 245, 123 N.E. 415 (1919)]; and [*In re*] *Stone*, [66 Ind.App. 38, 117 N.E. 669 (1917)].

*Indiana University Hospitals v. Carter*, 456 N.E.2d 1051, 1057 (Ind.App.1983). These comments concerning *Baker* were unnecessary to the holding in the quoted case, however, and so constituted *dicta*.

d. This "contract" between the insurer and the employee, like all contracts, impliedly imposes upon both parties a duty of good faith and fair dealing in the performance and enforcement of the contract. *Prudential Ins. Co. of North America v. Crouch*, 606 F.Supp. 464 (N.D.Ind.1985); *Sexton v. Meridian Mutual Ins. Co.*, 166 Ind.App. 529, 337 N.E.2d 527 (1975).

e. Accordingly, the breach of the insurer's duty of good faith gives rise to a cause of action by the employee.

The Workmen's Compensation and Occupational Disease Acts create a contract between employer and employee and, accordingly, between employee and insurer. *McGinnis v. American Foundry Co.*, 128 Ind.App. 660, 149 N.E.2d 309 (1958); *Hibler v. Globe American Corp.*, 128 Ind. App. 156, 147 N.E.2d 19 (1958). The employer procures insurance pursuant to the Acts; the Acts operate directly upon the insurance contracts and so extend the insurer's obligation to the employee. Because insurers owe to their insureds an obligation to deal in good faith, *Craft v. Economy Fire & Cas. Co.*, 572 F.2d 565 (7th Cir.1978); *Vernon Fire & Cas. Ins. Co. v. Sharp*, 264 Ind. 599, 349 N.E.2d 173 (1976), it follows that insofar as the Acts govern an insurance contract, the insurer also owes such an obligation to the employees of its insured.

Viewing the materials before the court in the light most favorable to Mrs. Jones, the opponent of the summary judgment motion, National Union must be deemed to have breached its obligation to deal with Mr. Jones in good faith, an obligation created by the impact of the Acts upon the insurance contract between National Union and Joy Manufacturing.

But while an insurer, like any other citizen, owes to all persons an obligation not to defraud such persons, it owes no obligation to all persons to handle workmen's compensation claims, to make workmen's compensation payments, or to cooperate with third-party litigation. It could owe these other duties only to persons who have, or claim to have, suffered injury, death or disease arising out of the course of their employment.

National Union owed Mr. Jones a contractual duty to deal with him in good faith, but owed that duty only by virtue of Mr. Jones' "disablement ... arising out of and in the course of [his] employment", the remedies concerning which are exclusively within the realm of Indiana's Industrial Board. Accordingly, insofar as Mrs. Jones' claim against National Union is based on the theory that National Union breached its contractual duty to deal in good faith with Mr. Jones, it states no claim upon which relief can be obtained under Indiana law from any entity other than Indiana's Industrial Board.

2.

Mrs. Jones points to language in *Baker* that, "It has been said in other contexts that 'bad faith' and 'fraud' are synonymous." 428 N.E.2d at 1346. The *Baker* court did not hold, however, that Indiana recognizes an independent tort of "bad faith". Compare *Savio v. Travelers Ins. Co.*, 678 P.2d 549 (Colo.App.1983); *Coleman v. American Universal Ins. Co.*, 86 Wis.2d 615, 273 N.W.2d 220 (1979). Faced with the issue of whether the workmen's compensation remedy of an award of attorney fees for "bad faith", IND.CODE 22–3–4–12, displaced a claim for recovery of attorney fees for fraud, the *Baker* court necessarily had to compare the types of conduct for which attorney fees were sought. Finding them to be "in other contexts ... synonymous" falls far short of creating a new and independent cause of action.

When asked at oral argument whether Indiana's courts have recognized a right of recovery for bad faith conduct, counsel for Mrs. Jones cited the court to *Liberty Mutual Ins. Co. v. Parkinson*, 487 N.E.2d 162 (Ind.App.1985), an insured's suit against his insurer for bad faith in settling her claim against an uninsured motorist. *Liberty Mutual* is a recent example of a long line of Indiana cases recognizing that "there is a legal duty implied in an insurance contract that the insurer must deal in good faith with its insured". 487 N.E.2d at 164. *Craft v. Economy Fire & Cas. Co.*,

572 F.2d 565 (7th Cir.1978); *Vernon Fire & Cas. Ins. Co. v. Sharp,* 264 Ind. 599, 349 N.E.2d 173 (1976); *Riverside Ins. Co. v. Pedigo,* 430 N.E.2d 796 (Ind.App.1982); *Rex Ins. Co. v. Baldwin,* 163 Ind.App. 308, 323 N.E.2d 270 (1975); *Sexton v. Meridian Mut. Ins. Co.,* 166 Ind.App. 529, 337 N.E.2d 527 (1975).

As noted above, however, Mr. Jones can be deemed National Union's insured only by operation of the Occupational Diseases Act; to the extent the claim is based on the insurance contract created by that Act, the sole remedy lies with the Industrial Board.

Mrs. Jones, like the plaintiff in *Vantine,* has shown no facts that would constitute an independent tort in Indiana. She has cited no Indiana case recognizing such an independent cause of action; Indiana appears to have approved no such theory of recovery. See *Naughgle v. Feeney-Hornak Shadeland Mortuary,* 498 N.E.2d 1298 (Ind.App.1986); *Orkin Exterminating Co., Inc. v. Walters,* 466 N.E.2d 55 (Ind.App.1984); *Little v. Williamson,* 441 N.E.2d 974 (Ind.App.1982). Cf. *Charlie Stuart Oldsmobile, Inc. v. Smith,* 171 Ind. App. 315, 357 N.E.2d 247 (1976), *modified upon reh'g,* 175 Ind.App. 1, 369 N.E.2d 947 (1977); see also *Elza v. Liberty Loan Corp.,* 426 N.E.2d 1302 (Ind.1981) (Hunter, J., dissenting from denial of transfer). Concepts such as bad faith may warrant additional or punitive damages when coupled with a breach of contract, *Vernon Fire & Cas. Ins. Co. v. Sharp,* 264 Ind. 599, 349 N.E.2d 173 (1976), or with what the *Vantine* court described as a "host tort". *Vantine v. Elkhart Brass Mfg. Co.,* 762 F.2d at 521–22. Standing alone, however, bad faith conduct is no ground for recovery of damages under Indiana law.

Because Mrs. Jones has shown no "host tort" or cognizable claim for breach of contract, summary judgment for National Union is proper on her claim for compensatory and punitive damages.

## IV.

Mrs. Jones argues that summary judgment is improper with respect to her because she has her own claim independent of the Occupational Diseases Act. She notes that the settlement with Union Oil and Schmock Brothers encompassed her recovery for loss of consortium. In *Dearing v. Perry,* 499 N.E.2d 268, 272 (Ind.App.1986), the Indiana Court of Appeals held that "any amounts allocated to loss of consortium are not subject to the insurance carrier's lien". In her brief, Mrs. Jones states, "Only a portion of Annie's award was paid to her out of the $630,000 check from Union Oil. The rest of Annie's claim is currently being intentionally withheld from her by the Defendant ..." (Plaintiff's November 24, 1986 memorandum, at 15).

Mrs. Jones' accounting of the funds cannot create a claim when none otherwise would exist. Under *Dearing,* the entire amount of National Union's lien would be due against Mr. Jones' share. The $630,-000.00 check was more than sufficient to cover Mrs. Jones' $250,000.00 consortium award. That she did not pay herself from the larger check cannot affect National Union's right to enforce its lien.

Mrs. Jones also argues that her bad faith claim for damages cannot be deemed to be within the Industrial Board's exclusive jurisdiction: "the cause of action before this Court was brought by Annie Jones individually and as Guardian for Robert Jones. The Defendant cannot seriously contend that the exclusive remedy provision of the Indiana Occupational Diseases Act prohibits Annie Jones, in her individual capacity, from bringing an action against the defendant for its bad faith." (Plaintiff's November 24, 1986 memorandum, at 14–15).

Assuming that Mrs. Jones' claim would not fall within the Industrial Board's exclusive jurisdiction, *but see Little v. Williamson,* 441 N.E.2d 974 (Ind.App.1981), her personal claim underscores the holding that her complaint as guardian states no claim cognizable in this court.

If the Occupational Diseases Act does not govern her suit, she can lay no claim to the statutory contractual privity with National Union that gave rise to the insurer's duty of good faith dealing with Mr. Jones. In no sense is she entitled to claim a breach of a contractual duty owing to her. As outlined above, Indiana recognizes no inde-

pendent cause of action for bad faith conduct, and Mrs. Jones has shown no "host tort" to support her bad faith claim. She simply has no basis for recovery against National Union under Indiana law.

Accordingly, National Union is entitled to judgment as a matter of law on Mrs. Jones' individual claim for compensatory and punitive damages.

### V.

The court turns next to Count 1 of National Union's counterclaim, in which it seeks the $23,757.56 that has been placed in escrow. National Union claims entitlement to that sum pursuant to IND.CODE 22–3–7–36, quoted at note 1, *supra*. Mrs. Jones argues that through its non-cooperation and conduct impeding her litigation, National Union has waived its statutory lien. As succinctly stated in a letter by her attorney to National Union following settlement of the third-party action with Union Oil and Schmock Brothers:

> As you know, we asked your company to initially investigate this third party action and your company refused. We asked your company to participate by hiring experts for the trial of this case and, again, your company refused. We asked you to pay a pro-rata share of the expenses and your company refused. Your company refused to allow Joy Manufacturing Company and its employees to cooperate with us in presenting our third party action. As a matter of fact, employees of Joy Manufacturing Company refused to speak with us as counsel for the Plaintiffs and the attorneys for Joy Manufacturing Company required us to subpoena employees of Joy Manufacturing Company under nearly hostile circumstances. We were asked and did in fact reimburse expenses to Joy Manufacturing Company employees for their trial appearance. In short, in my opinion, your company has waived any claim to any part of the settlement of the Plaintiffs in this case and any action by your company for any part of these proceeds will be vigorously defended.

(Affidavit of Gene M. Jones, Exhibit 25).

IND.CODE 22–3–7–36 makes no provision for an insurer's waiver of the statutory lien. By contrast, the Workmen's Compensation Act provides, "An employer or his compensation insurance carrier may waive its right to reimbursement under this section and, as a result of the waiver, not have to pay the pro-rata share of costs and expenses." IND.CODE 22–3–2–13. When "a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed". *Water Quality Ass'n v. United States*, 795 F.2d 1303, 1307–08 (7th Cir.1986), *quoting from* 2A Sutherland, Statutory Construction § 51.02 (4th ed. 1984). Had the Indiana General Assembly intended for an insurer to waive, expressly or impliedly, its lien against the employee's recovery from a third party, it plainly knew how to carry that intention into law.

Mrs. Jones' argument presents considerable equitable appeal: if, as the court must assume for summary judgment purposes, National Union acted in bad faith opposition to Mrs. Jones' suit against Union Oil and Schmock Brothers, equity should not favor National Union sharing in the recovery. Indiana's Occupational Diseases Act, however, places on the employer's insurer no duty to cooperate in any way with an employee's third party action. IND.CODE 22–3–7–36. Waiver of a statutory lien is not easily found in conduct authorized by the same statute.

It appears to the court that the Indiana General Assembly already has resolved Mrs. Jones' equitable argument in favor of National Union. The legislature placed upon the employer and its insurer the obligation to make prompt payment for diseases arising out of and in the course of employment; in exchange, the legislature took from the employee the ability to pursue certain common law rights against the employer and created a statutory lien in favor of the employer or its insurer against any third party recovery by the employee. To enforce that lien, the legislature required that the employer make certain con-

**450**

tribution toward the costs of litigation, although that contribution is to be made "out of any actual money reimbursement received by the employer or such employer's occupational disease insurance carrier pursuant to this section . . ." IND.CODE 22–3–7–36.

A legislative choice to require, as a condition to assertion of the statutory lien, cooperation with the employee's third party action, and to provide that the lien is waived absent such cooperation, would have been equally, or perhaps more, defensible. The legislature did not choose that path, however,[10] and this court cannot choose that path for it. As the Indiana Court of Appeals stated with respect to a different compensation issue, "The issue is a matter to be resolved by the General Assembly, if indeed any change is to be made." *Blade v. Anaconda Aluminum Co., Inc.,* 452 N.E.2d 1036, 1038 (Ind.App.1983).

Indiana law does not provide for waiver of the insurer's statutory lien. Any factual issues concerning National Union's conduct are immaterial. National Union is entitled to judgment as a matter of law on Count I of its counterclaim.

## VI.

For the foregoing reasons, the court finds that no genuine issue of material fact exists with respect to the plaintiff's complaint for compensatory and punitive damages or with respect to Count 1 of the defendant's counterclaim. The court further finds that the defendant is entitled to judgment as a matter of law with respect to those claims. Accordingly, the defendant's motion for summary judgment on the plaintiff's complaint and on Count 1 of the defendant's counterclaim should be, and hereby is, GRANTED.

SO ORDERED.

---

**10.** Indeed, counsel for National Union informed the court that during the 1987 session of the Indiana General Assembly a bill to amend IND. CODE 22–3–2–13 to require an insurer to pay, before trial, a proration of the cost of asserting a third-party claim, if requested to do so, died in committee.